OPINION
{¶ 1} On August 31, 2004, Mansfield Police Officer Doug Noblet stopped a vehicle being driven by appellant, William Mills. Officer Noblet pulled the vehicle over pursuant to a request by METRICH Drug Enforcement officers that had witnessed the vehicle at a known drug location. The METRICH officers wanted an identification of the occupants of the vehicle. In addition, Officer Noblet observed the rear window of the vehicle was very tinted and he believed the window tint violated a city ordinance. After stopping appellant, Officer Noblet discovered appellant did not have a valid driver's license and did have on his person a plastic bag containing what appeared to be powder and crack cocaine.
 {¶ 2} On October 6, 2004, the Richland County Grand Jury indicted appellant on one count of possession of crack cocaine in violation of R.C. 2925.11, and one count of trafficking in crack cocaine in violation of R.C. 2925.03(A). Appellant had also been cited for a window tint violation in violation of Mansfield Ordinance 337.22(B) and no operator's license in violation of Mansfield Ordinance 335.01(a).
 {¶ 3} On January 4, 2005, appellant filed a motion to suppress any evidence of the cocaine, claiming an illegal pat-down search of appellant's person. Appellant filed a supplemental motion to suppress, claiming an illegal stop, on February 11, 2005. A hearing was held on February 22, 2005. By judgment entry filed May 23, 2005, the trial court denied the motion.
 {¶ 4} A jury trial commenced on August 15, 2005. The jury found appellant guilty of the two counts in the indictment. By sentencing entry filed September 2, 2005, the trial court sentenced appellant to an aggregate term of five years in prison, to be served consecutively to a prison sentence from another case.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 6} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AFTER AN IMPROPER AND PRETEXTUAL TRAFFIC STOP OF DEFENDANT'S VEHICLE AND ILLEGAL SEARCH OF DEFENDANT'S PERSON."
 II {¶ 7} "FURTHER, THERE WAS INSUFFICIENT EVEIDENCE TO SUPPORT THE JURY'S VERDICTS OF GUILTY AS TO THE POSSESSION OF POWDER AND CRACK COCAINE AND THE KNOWING INTENT TO DISTRIBUTE POWDER AND CRACT COCAINE."
 III {¶ 8} "MOREOVER, THE DEFENDANT/APPELLANT'S CONVICTION FOR POSSESSION OF AND INTENT TO DISTRIBUTE POWDER AND CRACK COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, EFFECTIVELY DENYING THE DEFENDANT/APPELLANT OF A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION."
 IV {¶ 9} "TRIAL COUNSEL FOR DEFENDANT/APPELLANT WAS INEFFECTIVE DURING THE TRIAL PHASE OF THIS MATTER IN THAT HE FAILED TO OBJECT AND/OR CLARIFY THE ISSUE REGARDING THE CHARGE OF POSSESSION OF AND INTENT TO DISTRIBUTE CRACK COCAINE AS OUTLINED IN THE SECOND ASSIGNMENT OF ERROR AND COUNSEL'S FAILURE TO CALL KEY STATE WITNESSES FOR PURPOSES OF CROSS-EXAMINATION."
 I {¶ 10} Appellant claims the trial court erred in denying his motion to suppress. Specifically, appellant claims the stop of his vehicle was pretextual and the second pat-down of his person was illegal. We disagree.
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657,1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 12} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. A pretextual stop has been defined as a stop wherein the "police use a legal justification for making the stop to search for evidence of unrelated crimes without probable cause or reasonable suspicion." State v. Richardson (1994), 94 Ohio App.3d 501,506. However, in City of Dayton v. Erickson, 76 Ohio St.3d 3, syllabus,1996-Ohio-431, the Supreme Court of Ohio held the following:
 {¶ 13} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity."
 {¶ 14} We note the hearing on the motion to suppress was held on February 22, 2005, and pending at that time was a motion to suppress based upon the second pat-down of appellant's person and a supplemental motion based upon an illegal stop. During the hearing, defense counsel only argued the illegal stop. February 22, 2005 T. at 32-34. It was not until appellant filed a post-hearing brief on March 7, 2005 that the issue of the pat-down search was argued.
 {¶ 15} The trial court's May 23, 2005 judgment entry denying the motion to suppress speaks only to the stop and not the pat-down search:
 {¶ 16} "The officer testified that the windows of defendant's vehicle were not completely opaque because he could see well enough to see that the car was occupied. It was the stated belief of the officer that the defendant's vehicle violated local tinted glass codes and that he had a right and indeed a duty to stop the car for the violation. The officer did write a citation for improper tint.
 {¶ 17} "* * *
 {¶ 18} "In this case, Officer Noblet was looking for a reason to stop the vehicle. He observed what he perceived to be illegal tinting, made the stop and illegal drugs were found. The officer wrote a citation based upon his observation. The possibility that he could/should have written under a different municipal code only becomes relevant upon defendant's contest of the citation. It has no bearing upon the validity of the stop."
 {¶ 19} The trial court concluded at the time of the stop, Officer Noblet believed there was a possible window tint violation. February 22, 2005 T. at 4-6, 11-12. When Officer Noblet approached the vehicle, the passenger side door opened. Id. at 6. He observed an open beer can on the floor. Id. The driver, appellant herein, was approached and upon inquiry, appellant stated he did not have a driver's license. Id. at 6-7. Both appellant and his passenger were placed under arrest. Id. at 7-8, 17. Appellant was patted down and placed in the police cruiser. Id. at 12-13. After appellant had been in the closed cruiser, Officer Noblet opened the door and "there was a bad smell of marijuana coming from the back of the cruiser." Id. at 8. Appellant was patted down again for contraband and powder and crack cocaine were found in appellant's waistband. Id. at 8-9.
 {¶ 20} We concur with the trial court's analysis that it was Officer Noblet's subjective opinion there was a window tint violation and it was sufficient to meet the Terry test.
 {¶ 21} Although the trial court never addressed the issue of appellant's second pat-down, we find it was not a fatal error. Appellant was already under arrest for no operator's license and was not free to leave (he was seated in the locked police cruiser). Id. at 17. Officer Noblet detected an odor of marijuana and opined there might be the presence of contraband and therefore conducted a second pat-down. We note if appellant was to be transported to the police department, he would have been subjected to a second search. Therefore, we conclude because appellant was under arrest at the time of the second pat-down, no constitution intrusion occurred.
 {¶ 22} Upon review, we find the trial court did not err in denying appellant's motion to suppress.
 {¶ 23} Assignment of Error I is denied.
 II, III {¶ 24} Appellant claims his convictions for possession and distribution of powder and crack cocaine were against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 25} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 26} Appellant was convicted of possession of crack cocaine in violation of R.C. 2925.11(A) which states, "No person shall knowingly obtain, possess, or use a controlled substance," and trafficking in crack cocaine in violation of R.C. 2925.03(A) which states, "No person shall knowingly * * * [s]ell or offer to sell a controlled substance."
 {¶ 27} Appellant argues there was insufficient evidence of "knowingly" intent to distribute cocaine in an amount greater than ten grams and less than twenty-five grams. Appellant concedes the crack cocaine was individually wrapped (16 to 29 pieces), but argues there was no other evidence of the intent to sell or distribute. Appellant also argues the total weight of the cocaine seized did not reach ten grams.
 {¶ 28} Robert Burkes, a detective with the METRICH Enforcement Unit, testified on two occasions, a green Jeep Cherokee was observed by drug enforcement officers while on surveillance of several houses in a high drug trafficking area. T. at 117, 123. Individuals would approach the vehicle, talk to the occupants and leave. T. at 123, 125-127. The activity "did appear to be drug trafficking." T. at 123. The officers also had "national intelligence reports" that drugs were being sold out of the vehicle. T. at 130. The vehicle was the same green Jeep Cherokee that Officer Noblet stopped and appellant was driving. T. at 146, 152-153.
 {¶ 29} Mansfield Police Department Crime Lab specialist, Anthony Tambasco, analyzed, weighed and preserved the powder and crack cocaine seized. He described the packages as follows:
 {¶ 30} "As I began my analysis there was a large piece of plastic had a large amount of substance in that contained in here it is approximately 7.1 grams. So one package 7.1 by itself. That was pulled out and put away separately. Another large package was found to contain also in the ballpark of 7.1 grams. That was pulled out and also put away separate. The remaining 29 were small packages. They would be about that (indicating) big with an off-white substance in there. Those 29 packages were unwrapped. They were placed together in this third bag. The total reflected in the report is approximately 21 grams. It comes from the 31 samples, but I went with the first big piece, the next big piece, and then all the little pieces and put them together." T. at 197.
 {¶ 31} Mr. Tambasco further concluded the total weight contained cocaine base. T. at 199. There were thirty-one packages with a total weight of 21.29 grams. T. at 200.
 {¶ 32} Upon review, we conclude the evidence of appellant being in a drug environment and observed on two occasions engaging in activity that appeared to be drug trafficking, coupled with the discovery on appellant's person of powder and crack cocaine totaling 21.29 grams in thirty-one packages, is sufficient to substantiate a finding of guilty of possession and trafficking of drugs.
 {¶ 33} Assignments of Error II and III are denied.
 IV {¶ 34} Appellant claims his counsel was ineffective by failing to demonstrate to the jury his lack of intent to distribute cocaine (Assignment of Error II) and failing to call other officers present at the stop to contradict Officer Noblet's testimony (Assignment of Error I). We disagree.
 {¶ 35} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 36} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 0.0.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 37} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 38} Defense counsel cross-examined the state's forensic expert, Mr. Tambasco. T. at 202-204. Furthermore, defense counsel established no other drugs or paraphernalia were found in appellant's vehicle and no money was found on appellant to indicate he was selling cocaine. T. at 149. In closing argument, defense counsel argued that no one observed appellant sell any drugs. T. at 222-223.
 {¶ 39} Appellant also argues other witnesses to the stop should have been called by defense counsel. The burden was upon the state to defend the stop of the vehicle and not vice-a-versa. It could have well been within defense counsel's trial strategy not to enhance the evidence with the testimony of other officers. This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987),32 Ohio St.3d 380, 388.
 {¶ 40} Upon review, we find no ineffective assistance of trial counsel given the evidence presented. We cannot speculate to any evidence not in the record.
 {¶ 41} Assignment of Error IV is denied.
 {¶ 42} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
By Farmer, J.
Gwin, P.J. and
Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed.